The appellant was indicted for murder, in violation of § 13A- 6-2, Code of Alabama 1975. She was found guilty of the lesser included offense of manslaughter and was sentenced to 10 years in prison. She raises three issues on appeal.
 I
The appellant first contends that the trial court erred in denying her motion for judgment of acquittal because, she argues, the State failed to prove that she did not act in self-defense. The State presented the following evidence in support of its case:
George Lee Smith, the appellant's husband, testified that there were several people at his house on the evening of March 30, 1990. The victim, Winford Moore, came to his house with Bobby Carter. Smith testified that Carter was an acquaintance of his and that he had never seen Moore *Page 471 
before. He testified that he went into the den with Moore and Carter. After approximately 20 minutes, Moore stated that he wanted to "mess with the ladies" and started to curse. (R. 43.) Smith testified that when Carter left, he asked Moore to leave with Carter. He stated that Moore refused and said, "I'm not going no damn where." (R. 45.) Smith testified that he continued to ask Moore to leave. Moore continued to refuse, and he used more profanity. Smith testified that the appellant was standing in the doorway during his conversation with Moore. Smith grabbed Moore and told him that he needed to leave. Smith testified that Moore swung at him and missed. Moore swung a second time and missed again. Smith testified that the appellant shot Moore when Moore moved his hand toward the pocket of his pants. Smith further testified that his back was to the appellant when the shooting occurred. He also testified that he never saw a weapon on Moore.
Joyce Baker, the appellant's aunt, testified that Winford Moore was at the appellant's house on the evening of March 30. She testified that she did not believe that he had any weapon. She stated that she went into the den and that Moore cursed at her and grabbed her arm and she then left the room. She testified that Smith and the appellant were trying to get Moore out of the house. She stated that she heard a noise that sounded like a firecracker and that she then saw the appellant in the hallway and Moore on the floor.
Bobby Carter testified that he went to the appellant's house with Moore and that they stayed for approximately 45 minutes. He testified that he did not see any weapon on Moore.
Officer Phillip Byrum of the Huntsville Police Department testified that he responded to a call concerning a shooting at the appellant's home. When they arrived, they found that Moore had a bullet wound in the neck area. After being advised of herMiranda rights, the appellant stated that when Moore was asked to leave, he started fighting with her husband. She stated that Moore and her husband were wrestling and that she pulled a gun and shot Moore. She also stated that Moore and her husband did not hit each other. Sergeant Andy Jackson of the Huntsville Police Department testified that Moore was pronounced dead at the hospital. The State rested, and the appellant's motion for judgment of acquittal was denied.
The appellant testified that after Bobby Carter went to his automobile, her husband told Moore that he needed to leave because his ride was leaving. She testified that Moore "started clowning and arguing around and said he wasn't going no damn where." (R. 132.) Her husband put his arm on Moore's shoulder and told him to leave. Moore and her husband started fighting, and Moore swung at her husband. She testified that Moore's first swing missed her husband, but that his second swing grazed her husband's face. She testified that her husband fell against the wall and that she then shot Moore. She then testified that she shot Moore when she saw his hand move toward his pocket. On cross-examination, the appellant testified that she did not see Moore with any kind of weapon and that they had no difficulties with him until he was asked to leave. Numerous character witnesses also testified on the appellant's behalf.
"Once the issue of self-defense is raised, the State must prove that the accused did not act in self-defense in the sense that the State must prove a prima facie case of unjustified homicide." Ex parte Johnson, 433 So.2d 479, 481 (Ala. 1983). See also Howard v. State, 420 So.2d 828
(Ala.Crim.App. 1982). Thus, the State continues to have the burden of proving all of the elements of homicide and "must counter any evidence presented by the defendant which would raise a reasonable doubt as to the existence of one of those elements."Johnson at 481. The weight and credibility of the evidence is for the jury's determination. Id.
The State presented evidence that Moore and the appellant's husband were wrestling when the appellant fired the gun. Although the appellant claimed that she acted because she believed the victim was *Page 472 
reaching for a weapon, all of the evidence indicates that the victim was unarmed. A jury question was presented as to whether the appellant reasonably believed that the victim was using or was about to use deadly force against her or her husband so as to justify her actions. See Johnson. The State's evidence sufficiently negated the appellant's theory of self-defense, and the appellant's motion for judgement of acquittal was properly denied. We note that "Section13A-6-3(a)(2) is designed to cover those situations where the jury does not believe a defendant is guilty of murder, but also does not believe that the killing was totally justified by self-defense." Johnson v. State, 571 So.2d 375, 377
(Ala.Crim.App. 1990).
 II
The appellant next contends that the State failed to meet its burden of proof because the trial court did not prove the victim's cause of death. The appellant failed to preserve this issue for our review. The record reveals that when moving for a judgment of acquittal after the State's case and at the close of all of the evidence, the appellant specifically contended that the State failed to prove that she had not acted in self-defense and that the charge therefore should be amended from murder to manslaughter. Specific grounds of objection waive all other grounds not specified at trial. Johnson v.State, 526 So.2d 34 (Ala.Crim.App. 1987). The appellant failed to bring the issue now raised to the trial court's attention and thus failed to preserve this issue for review.See, e.g., Slater v. State, 575 So.2d 1208
(Ala.Crim.App. 1990), cert. denied, 575 So.2d 1211 (Ala. 1991);Smoot v. State, 520 So.2d 182 (Ala.Crim.App. 1987). Even if this issue had been preserved for review, the appellant's argument would have failed because it appears from the record that the cause of the victim's death was sufficiently proved by circumstantial evidence. See, e.g.,Hollis v. State, 399 So.2d 935 (Ala.Crim.App. 1981).
 III
The appellant finally contends that the trial court erred in admitting her confession into evidence because she was under the influence of alcohol when she waived her Miranda
rights. The record reveals that Officer Byrum responded to an emergency 911 call that was placed by the appellant. After securing the scene, he escorted the appellant to his patrol car and advised her of her Miranda rights. Byrum testified that he smelled alcohol on the appellant. He also testified that her speech was slightly slurred and that she swayed a little when she walked. Byrum also testified that the appellant was able to walk to his car without help. He stated that she was a little shaky, but that she was not overly excited. Byrum further testified that the appellant stated that she understood her rights; that she appeared to understand what he was saying; that he was able to understand her; and that her responses were appropriate. Byrum testified that the appellant was not threatened, nor was she promised any inducement or reward for making a statement. During her testimony, the appellant herself testified that she had understood her rights and that she had wanted to tell the police what happened.
"In order for intoxication to render a confession inadmissible, it must be shown that the mind of the defendant was substantially impaired when the confession was made."Hubbard v. State, 500 So.2d 1204, 1218
(Ala.Crim.App.), aff'd, 500 So.2d 1231 (Ala. 1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987). "The intoxicated condition of an accused when he makes a confession, unless it goes to the extent of mania, does not affect the admissibility in evidence of the confession, but may affect the weight and credibility." Callahan v. State,557 So.2d 1292, 1300 (Ala.Crim.App. 1989), aff'd,557 So.2d 1311 (Ala.), cert. denied, ___ U.S. ___,111 S.Ct. 216, 112 L.Ed.2d 176 (1990). The voluntariness of a confession is a question of law addressed to the trial court and the decision of the trial court will not be reversed on appeal unless contrary to the great weight of the evidence.Summleor v. State, 571 So.2d 1280 (Ala.Crim.App. 1990); Moore v. State, 488 So.2d 27 *Page 473 
(Ala.Crim.App. 1986). The record reveals that there was ample evidence from which the trial court could conclude that the appellant's confession was knowingly and voluntarily made. We find no error in the admission of the confession.
For the reasons set forth above, the judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.